## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| ANDREW SHERIFF & MIKE JOHANNES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Docket no. 2:21-cv-00115-GZS |
| MATTHEW GARDNER, et al., | ) ) | |
| Defendants. | ) ) | |

## ORDER ON PENDING MOTIONS

Before the Court are the following motions and filings: (1) the Motion to Dismiss by Defendants Matthew Gardner and 440 Mount Hope Realty Trust (ECF No. 27); (2) the Motion to Reconsider by Plaintiffs Andrew Sheriff and Mike Johannes (ECF No. 29); and (3) Plaintiffs' Answer (ECF No. 28) to the Court's Order to Show Cause. Upon due consideration, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss (ECF No. 27), and DENIES the Motion to Reconsider (ECF No. 29). As to the Order to Show Cause, having considered Plaintiffs' Answer, the Court now DISMISSES Plaintiff Mike Johannes from the action.

## I.    LEGAL STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, [the Court] 'perform[s] [a] two-step analysis.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). First, the Court "must separate the [pleading]'s factual allegations (which must be accepted as true) from its conclusory

legal allegations (which need not be credited)." Morales-Cruz v. University of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678). Second, the Court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "This standard is 'not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar, 818 F.3d at 18 (quoting Iqbal, 556 U.S. at 678). "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (cleaned up). Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability" from the facts. Id. at 13.

In assessing whether a complaint adequately states a claim, the Court considers the "facts and documents that are part of or incorporated into the complaint." United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 39 (1st Cir. 2011) (cleaned up). But, the Court may also "supplement those facts with facts 'gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'" González v. Vélez, 864 F.3d 45, 48 (1st Cir. 2017) (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). Likewise, when reviewing a pro se pleading a somewhat "less stringent" standard applies, and the Court may consider other filings by the pro se litigant in order to "understand the nature and basis of his claims." Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003) (cleaned up).

## II.    BACKGROUND

On March 27, 2021, Plaintiff Andrew Sheriff ("Buyer") entered into a purchase and sale agreement ("Agreement") with Defendant 440 Mount Hope Realty Trust ("Seller"), with

Defendant Matthew Gardner as Trustee ("Trustee"), for the property located at 440 Mount Hope Road in Sanford, Maine.  (See Ex. A (ECF No. 1-1), PageID # 7.)[1]  Defendant King Real Estate ("KRE") acted as the Seller's Agent.  (Id.)  Per the terms of the Agreement, the purchase price was $359,000 and Sheriff paid a $50,000 "non refundable" deposit to KRE.  (See Exs. A & B (ECF Nos. 1-1 & 1-2), PageID #s 7 & 12.)  KRE was to hold the deposit "and act as escrow agent until closing," which was scheduled for April 21, 2021.  (Ex. A, PageID # 7.)

As relevant here, the Agreement provided that the Seller was to correct outstanding code violations as well as perform septic service and repairs "prior to closing."  (Ex. A, PageID # 10.) Despite the April 21, 2021 closing date, it was also noted that:  "Buyer would like the 1st floor unit for occupancy now for the buyer [sic] own use."  (Id.)[2]

The Agreement also had several terms governing disputes between the parties.  For instance, in the event of the "Seller's failure to fulfill any of Seller's obligations," the Buyer was permitted to "employ all legal and equitable remedies, including without limitation, termination of [the] Agreement and return to Buyer of the [deposit]."  (Id., PageID # 9.)  Additionally, the Agreement had a mediation clause, stating that:

> If a party fails to submit a dispute or claim to mediation prior to initiating litigation (other than requests for injunctive relief), then that party will be liable for the other party's legal fees in any subsequent litigation regarding that same matter in which the party who failed to first submit the dispute or claim to mediation loses in that subsequent litigation.

(Id.)

---

[1] The Court notes that a series of exhibits (ECF Nos. 1-1–1-16) were attached to the initial Complaint.  Plaintiffs, appearing pro se, did not reattach the same exhibits to their Amended Complaint.  However, to the extent their amended pleading references the same exhibits, the Court considers the exhibits incorporated into the Amended Complaint.

[2] The Court notes the inclusion in the record of two addenda, neither signed by both parties, relating to Sheriff's decision to occupy a unit in the property before closing.  See Exs. O & P (ECF Nos. 1-15 & 1-16).  One of these unsigned addenda suggests that Sheriff occupied Unit A as of April 8, 2021.  See Ex. O, PageID # 113.

In the lead-up to the closing, Sheriff unsuccessfully attempted to renegotiate the purchase price.  (See Am. Compl. (ECF No. 18), PageID # 172.)  In the end, the Seller did not make the agreed-upon repairs to the property and the parties failed to close.  (Id., PageID #s 171–73.) Sheriff's deposit was not returned.  (Id., PageID #s 172–73.)

### A.  Procedural History

On April 28, 2021, Sheriff, together with a second pro se plaintiff, Mike Johannes, filed a complaint against the Seller, Trustee, and KRE.  (See Compl. (ECF No. 1)).  The Amended Complaint identifies Johannes as a "shareholder" with a "14% investment share."  (See Am. Compl., PageID # 169.)  Invoking diversity jurisdiction, the Amended Complaint asserts that Sheriff and Johannes are both "of 1290 Woodbury Ave. Portsmouth N.H. 03801," whereas Defendants reside in Maine.  (Id., PageID #s 169–70.)

The Amended Complaint alleges that the Seller breached the Agreement by failing to complete repairs to the property, failing to close, and failing to settle or respond to a June 2021 request for mediation.  (Id., PageID #s 171–73.)  The Amended Complaint also alludes to theories of fraud and unjust enrichment and requests the Court to "quiet title" in Sheriff's favor.  (Id., PageID # 175.)  As to KRE, the Amended Complaint alleges "[t]here is a theory of 'tortious interference' by the Seller's Agent, who clearly engineered the whole debacle."  (Id.)  However, the only factual allegation regarding KRE is a reference to an email that a KRE broker sent to Sheriff to follow up on a phone conversation.  (See id., PageID # 172 & Ex. C (ECF No. 1-3), PageID # 13.)  This email, dated April 20, 2021, transmits a counteroffer from the Seller and asserts that Sheriff had occupied the property without legal rights and prevented the completion of the repair work.

In a December 23, 2021 Order, the Court granted KRE's motion to dismiss for failure to state a claim and ordered Johannes to show good cause why he should be allowed to continue to

proceed as a pro se plaintiff in this action.[3]   (See generally 12/23/21 Order (ECF No. 26).)   The Seller and Trustee subsequently moved to dismiss, also requesting attorney's fees based on Plaintiffs' alleged failure to satisfy the mediation clause.   (See generally Defs. Mot. (ECF No. 27).) Plaintiffs, for their part, moved to reconsider the dismissal of KRE from the action.   (See generally Pls. Mot. (ECF No. 29).)[4]

## III.   DISCUSSION

### A.  Defendants' Motion to Dismiss (ECF No. 27)

#### 1.  Breach of Contract

Under Maine law, "[t]o obtain relief for a breach of contract, the plaintiff must demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages. . . .  [T]he question of whether there has been a breach of contract is a question of fact."  Wuestenberg v. Rancourt, 226 A.3d 227, 232 (Me. 2020) (cleaned up).  Here, the Court initially construes the Amended Complaint as alleging that the Seller breached the Agreement by failing to effect the repairs listed in the Agreement and close the sale.

#### a.  Failure to Close

Defendants offer two defenses to this alleged breach.  First, Defendants assert that their nonperformance is excusable because the fulfillment of the Agreement's terms was "rendered

---

[3] The Court's Order also set a deadline for Defendants to respond to the Amended Complaint, see 12/23/21 Order, PageID # 215, which Plaintiffs presently argue precluded Defendants from filing their Motion to Dismiss, see Pls. Response (ECF No. 30), PageID # 233.  To be clear, the Court's order did not in any way preclude Defendants from filing the present Motion.  See generally Fed. R. Civ. P. 12.

[4] The Court notes that, in addition to the separately filed motions at issue, Plaintiffs' response to the Motion to Dismiss requests sanctions pursuant to Federal Rule of Civil Procedure 11.  See Pls. Response (ECF No. 30), PageID # 233. Because this request is procedurally defective in several fatal ways, it is denied.  See Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 244 (1st Cir. 2010) ("A Rule 11 motion must be made 'separately from any other motion,' . . . [and] [t]he moving party must furthermore serve the Rule 11 motion on opposing counsel at least twenty-one days prior to filing with the court so as to provide the adversary time to withdraw the challenged paper, claim, contention, or defense." (quoting and citing Fed. R. Civ. P. 11(c)(2))); Eagle Eye Fishing Corp. v. U.S. Dep't of Com., 20 F.3d 503, 506 (1st Cir. 1994) ("[T]he right of self-representation is not a license not to comply with relevant rules of procedural and substantive law." (cleaned up)).

impossible by the act of . . . the other party." (Defs. Mot., PageID # 218 (quoting Campbell v. Machias Sav. Bank, 865 F. Supp. 26, 35 (D. Me. 1994).) In support of this contention, Defendants direct the Court's attention to the KRE broker's April 20, 2021 email and Plaintiffs' own pleadings. In particular, they note Plaintiffs' statement that: "The Seller contracted to deliver the said real estate property by April 21, 2021 with all required performance completed, yet this proved impossible and unworkable in practice." (Id., PageID # 218 (citing Am Compl., PageID # 172).) Defendants further assert that their rejected counteroffer offered more value than Plaintiffs presently allege the repairs were worth. (Id., PageID # 219 (citing Am. Compl., PageID # 174).)

To the extent Defendants rely on Plaintiffs' choice of words in the Amended Complaint, given Plaintiffs' lay status, the Court is not prepared to dismiss the claim based on the phrasing of their pleading.[5] See Vieira v. De Souza, 22 F.4th 304, 311 (1st Cir. 2022) ("[C]ourts must be mindful of the challenges faced by pro se litigants and construe their arguments liberally[.]"). The Court further notes that Plaintiffs' early occupancy of the property was acknowledged as a possibility in the Agreement itself, and it is therefore unclear, on this undeveloped record, that Defendants should be able to benefit from an event they had reason to anticipate. Cf. Restatement (Second) of Contracts § 261, cmt. c (1981) ("A party may, by appropriate language, agree to perform in spite of impracticability that would otherwise justify his non-performance . . . . He can then be held liable for damages although he cannot perform. Even absent an express agreement, a court may decide, after considering all the circumstances, that a party impliedly assumed such a greater obligation."). At this stage, the Court declines Defendants' invitation to hold that their alleged nonperformance must be excused as a matter of law.

---

[5] To the extent Defendants rely on the KRE broker's April 20, 2021 email for the proposition that Plaintiffs' actions precipitated Defendants' nonperformance, such use constitutes hearsay. See FRE 801(c) (defining hearsay). Further, to the extent Defendants rely on the counteroffer presented in that email, the Court notes that it has previously found this use barred by Federal Rule of Evidence 408. See 12/23/21 Order, PageID # 212 n.4.

Defendants' second theory is that Plaintiffs anticipatorily repudiated the Agreement.  (See Defs. Reply (ECF No. 32), PageID #s 246–47.)  "Under Maine law, 'an anticipatory repudiation of a contract is a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.'" Roger Edwards, LLC v. Fiddes & Sons, Ltd., 387 F.3d 90, 95 (1st Cir. 2004) (cleaned up) (quoting Wholesale Sand & Gravel, Inc. v. Decker, 630 A.2d 710, 711 (Me. 1993)).  In support of their argument, Defendants point to Plaintiffs' attempt to negotiate a lower purchase price in the days before closing.  However, on the current record, the Court cannot yet say that this attempt rose to the level of an anticipatory repudiation, the demands for which are steep.  See id. at 95–96 ("The words or conduct evidencing the anticipatory repudiation must be definite, unequivocal, and absolute.  Moreover, the repudiation must concern obligations or promises going to the whole consideration." (cleaned up)).  While the Court appreciates that Defendants may ultimately be able to establish one or more defenses to Plaintiffs' breach of contract claim, the Court concludes that Plaintiffs have pled a plausible claim for breach of contract.

**b.  Failure to Return Deposit**

Plaintiffs also assert that they should be entitled to the return of their $50,000 deposit, despite the fact the deposit was explicitly designated as "non refundable."  (Ex. A, PageID # 7.) Defendants argue that the failure to return the deposit cannot provide a basis for a breach of contract claim given this explicit language.  (See Defs. Reply, PageID # 247.)  However, in multiple instances, the Agreement appears to allow for the deposit's return.  (See Ex. A, PageID #s 7–9 & 27.)  For instance, paragraph 16 of the Agreement contemplates Plaintiff Sheriff's entitlement to the return of the deposit in the event of Defendant's failure to perform. (See id., PageID # 9.)  This internal inconsistency within the Agreement may allow for differing

7

interpretations, potentially rendering the relevant terms ambiguous.  See <u>State v. Palmer</u>, 145 A.3d 561, 566 (Me. 2016) ("A contractual provision is ambiguous if it is reasonably possible to give that provision at least two different meanings." (cleaned up)); <u>Dow v. Billing</u>, 224 A.3d 244, 250 (Me. 2020) (When "a contract contains an ambiguity that cannot be resolved from the four corners of the document, the interpretation of the ambiguous language becomes a question for the fact-finder to resolve by taking extrinsic evidence."); <u>Gendron Realty, Inc. v. N.J. Gendron Lumber Co. of Portland</u>, 519 A.2d 723, 725 (Me. 1987) (resolving "ambiguities in . . . construction [of contract language] against . . . the party who . . . supplied the form contract containing it").  <u>But see</u> Restatement (Second) of Contracts § 203(d) & cmt. f (indicating separately negotiated or added terms are generally given greater weight than standardized terms or terms not separately negotiated).

In short, Plaintiffs' claim of breach of contract claim survives Defendants' request for dismissal.[6]

## 2.  Unjust Enrichment

"To prevail on a claim for unjust enrichment, the complaining party must show that (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value."  <u>Knope v. Green Tree Servicing, LLC</u>, 161 A.3d 696, 699 (Me. 2017) (cleaned up).  While a plaintiff cannot ultimately

---

[6] To the extent that the Amended Complaint additionally can be construed to allege Defendants breached the Agreement by refusing to renegotiate the closing price, Defendants correctly assert that Plaintiffs lacked a contractual right to demand a renegotiation of the agreed-upon terms.  <u>See</u> Defs. Mot., PageID #s 219–20 (citing <u>Brunswick Diggers, Inc. v. Anthony Grace & Sons, Inc.</u>, 187 A.2d 391, 395 (Me. 1963)).  The Agreement contains a provision concerning its amendment, and this provision does not suggest Plaintiffs could compel the Seller to renegotiate.  <u>See</u> Ex. A, PageID # 10; <u>see also</u> Restatement (Second) of Contracts § 287 cmt. a (requiring "assent by the other party" before a proposed alteration to a contract becomes valid).  If an action lies in contract, it lies in the breach of the agreed-upon terms, not in Defendants' refusal to alter those terms.

recover under both breach of contract and unjust enrichment theories, the Federal Rules of Civil Procedure permit the alternative pleading of inconsistent claims.  See Fed. R. Civ. P. 8(d)(3); see also Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012) ("Although damages for breach of contract and unjust enrichment are mutually exclusive, it is accepted practice to pursue both theories at the pleading stage." (cleaned up)).

At this stage, assuming that Plaintiffs cannot establish a breach of contract based on the failure to refund their deposit, Plaintiffs plausibly allege an unjust enrichment claim based on Defendants' retention of the deposit despite not closing or effecting the required repairs.  Although the conditions under which the deposit may be returned appear to be governed (one way or the other) by the Agreement, the Court "need not reject [Plaintiffs'] equitable claim . . . now on the ground that [they are] limited to the contract remedy."  Lass, 695 F.3d at 141.  Thus, the Court concludes Plaintiffs' claim for unjust enrichment survives to the extent it is viewed as pled in the alternative.

### 3.  Fraud

The Amended Complaint lists "fraud" as a cause of action in its caption and uses the phrase "the frauds of interference, and later misrepresentation" in the body of the document.  (See Am. Compl., PageID #s 169 & 174.)  The Court liberally construes the Amended Complaint to assert a claim of fraudulent misrepresentation.  Under Maine law, in order to prevail on a claim for fraudulent misrepresentation, a plaintiff is required to prove five elements:

> (1) a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

Cianchette v. Cianchette, 209 A.3d 745, 752 (Me. 2019) (cleaned up).  Under Federal Rule of Civil

Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting

fraud."  Plaintiffs' Amended Complaint fails to meet this mark.

In their response papers, Plaintiffs assert that the size of the deposit defied industry practice

and that Defendants lured Plaintiff Sheriff into a "contract to repair and immediately settle the

transaction, in a time frame that was impossible and arguably without any real intention to

perform."  (Pls. Response (ECF No. 30), PageID # 234.)  As to the size of the deposit, the Court

does not see where any misrepresentation lies.  If Plaintiffs are seeking to make out an argument

of unconscionability, such an argument is distinct from fraud.  See Blanchard v. Blanchard, 148

A.3d 277, 282–83 (Me. 2016).

Thus, the Court concludes that the Amended Complaint fails to state a plausible claim of

fraud that meets the applicable pleading requirements.  See Fed. R. Civ. P. 9(b).

### 4.  Quiet Title

"Actions to quiet title . . . [are] used primarily to establish the existing state of title rather

than to compel a transfer of title."  U.S. Bank Nat'l Ass'n v. Gordon, 227 A.3d 577, 582 n.4 (Me.

2020) (Horton, J., concurring); see also Welch v. State, 853 A.2d 214, 216 (Me. 2004) ("A quiet

title action asks only that a court decide the relative rights of the [parties] regarding ownership of

some specific property interests.").  "[T]he plaintiff in a quiet title action has the burden of proving

better title than that of the defendant."  Hodgdon v. Campbell, 411 A.2d 667, 671 (Me. 1980).

In Maine, actions to quiet title can be brought both via statute and in equity.  Maine's quiet

title statute provides as follows:

> A person in possession of real property, claiming an estate of freehold therein . . .
> may, if he or those under whom he claims or those claiming under him have been
> in uninterrupted possession of such property for 4 years or more, bring an action
> . . . setting forth his estate, stating the source of his title, describing the premises,
> and averring that an apprehension exists that persons named in the complaint . . .

claim or may claim some right, title or interest in the premises adverse to his said estate; and that such apprehension creates a cloud upon the title and depreciates the market value of the property . . . .

14 M.R.S.A. § 6651.  This statutory cause of action is not a fit for this case, not least because Plaintiffs do not contend to have had possession of the property for four years.  As to equity, "an action to quiet title may be brought under the general equity jurisdiction of the Superior Court even though the plaintiff is not in possession, where fraud, an independent ground of equity jurisdiction is alleged and inadequate relief is available at law."  Lewien v. Cohen, 432 A.2d 800, 804 n.8 (Me. 1981).  However, because Plaintiffs have failed to plausibly allege fraud, they also cannot state a plausible claim of quiet title in equity.  As such, a quiet title claim is foreclosed to Plaintiffs.

In seeking dismissal of any quiet title claim that can be discerned from the Amended Complaint, Defendants assert that Plaintiffs fail to state a claim under 14 M.R.S.A. §§ 6701 & 6702.  (See Defs. Mot., PageID # 221.)  These statutes govern "[r]eal actions for the 'recovery' of real property."  Ogden v. Labonville, 242 A.3d 177, 181 (Me. 2020).  "Unlike quiet title proceedings, a real action is only available to one out of possession who can prove an estate in the realty that entitles him to recover possession."  Lewien, 432 A.2d at 802.  As Defendants note, a real action can only be maintained if the plaintiff can demonstrate a right of entry.  (See Defs. Mot., PageID # 221 (citing 14 M.R.S.A. § 6702).)  For present purposes, it is enough to say that the Court does not construe the Amended Complaint to invoke section 6701, especially in light of Plaintiffs' clearly stated response that this "case is not about the right of entry."  (See Pls. Response, PageID # 236.)

Thus, the Court finds that the Amended Complaint fails to state any plausible claim to quiet title or any real action under 14 M.R.S.A. § 6701.

### 5.  Defendants' Request for Attorney's Fees

Under the terms of the mediation clause, a party that initiates litigation without first seeking mediation will become liable for the other party's legal fees in the event the party that failed to seek mediation is defeated in court.  (See Ex. A, PageID # 9.)  Here, because the case is ongoing, Defendants' request for fees is not ripe for consideration at this time.

Thus, the Court finds Plaintiffs' Amended Complaint states plausible claims for breach of contract and unjust enrichment.  However, as to the other claims asserted, the Court grants Defendants' Motion to Dismiss.  Having resolved this Motion, the Court turns to Plaintiff's Motion to Reconsider.

### B.  Plaintiffs' Motion to Reconsider (ECF No. 29)

Plaintiffs ask this Court to revisit its December 23, 2021 Order (ECF No. 26) to the extent that it dismissed Defendant King Real Estate from this action.  Under District of Maine Local Rule 7(f), a motion to reconsider an interlocutory order "shall demonstrate that the order was based on a manifest error of fact or law and shall be filed within 14 days from the date of the order unless the party seeking a reconsideration shows cause for not filing within that time."  The First Circuit has cautioned that "[t]he granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly."  Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (cleaned up).

In the December 23, 2021 Order, the Court found that the Amended Complaint stated no plausible factual allegations that KRE was liable for the Seller's breach or engaged in tortious interference.  (12/23/21 Order, PageID #s 212–13.)  In their Motion to Reconsider, Plaintiffs argue that KRE had a duty to not accept the $50,000 deposit because it was higher than what Plaintiffs assert to be standard practice in the industry.  (Pls. Mot., PageID #s 228–29.)  Plaintiffs further assert that the KRE agent's April 20, 2021 email was in "bad faith."  (Id., PageID # 229.)

The Court observes that Plaintiffs' Motion was filed on January 10, 2022, 18 days after the Court's December 23, 2021 Order. As such, the Motion is untimely, which forms a sufficient ground to deny it. The Court alternatively holds that, even if the Motion were timely filed, Plaintiffs have failed to identify a manifest error of fact or law in the December 23, 2021 Order.

### C. Order to Show Cause (ECF No. 26) & Plaintiffs' Answer (ECF No. 28)

In ordering Plaintiff Johannes to show cause, the Court observed that he was not individually named as a Buyer in the Agreement. (12/23/21 Order, PageID # 214.) Rather, he was listed in the Amended Complaint as a "shareholder," and the Court indicated its skepticism that Johannes was entitled to appear pro se in such a capacity. (See id. (citing 1900 Cap. Trust III v. Sidelinger, No. 2:19-cv-00220-DBH, 2021 WL 2680193, at *2 n.4 (D. Me. June 30, 2021)).)

In response to the order to show cause, Plaintiffs assert that Sheriff contracted with Defendants in part for Johannes's benefit and that, as a shareholder, Johannes now has the right to appear pro se in an individual capacity.[7] (See Pls. Answer (ECF No. 28), PageID #s 225–26.) Plaintiffs further contend that, in any event, Johannes is entitled to stand for the benefit of Sheriff. (Id.) They also assert the $50,000 deposit retained under the Agreement reflects Johannes's pro rata contribution, despite the fact the deposit check (submitted to the Court by Plaintiffs) reflects that the deposit was paid by Sheriff. (See Ex. B (ECF No. 1-2), PageID # 12.) In short, Plaintiffs' arguments for Johannes's continued appearance in this case as a pro se plaintiff lack legal merit or factual support. See Sidelinger, 2021 WL 2680193, at *2 n.4; 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases *personally or by counsel* as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

---

[7] In a related action in this Court, Johannes has asserted that a "realty partnership" exists between himself and Sheriff. Mot. to Reconsider (ECF No. 20), PageID # 73 in D. Me. Docket No. 2:21-cv-00151-GZS ("Sheriff II"). In the same action, while denying an in forma pauperis application, Judge Rich explained to Johannes, who did not purport to be a licensed attorney, that he could not act on Sheriff's behalf. See 6/11/21 Order (Sheriff II, ECF No. 5).

(emphasis added)).  Thus, the Court hereby dismisses Mike Johannes as a plaintiff and filer in this action going forward.

## IV.    CONCLUSION

For the reasons just given, Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss of Defendants Matthew Gardner and 440 Mount Hope Realty Trust (ECF No. 27); DENIES Plaintiffs' Motion to Reconsider (ECF No. 29); and DISMISSES Plaintiff Mike Johannes from the action.  The only remaining claims in this action are Plaintiff Sheriff's claims for unjust enrichment and breach of contract.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 6th day of April, 2022.